JOHN JOSEPH *vs.* DANTE DI GUILIO.

APRIL 2, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action in trespass for assault and battery resulted in the superior court in a verdict in favor of the plaintiff in the sum of $3000.   Thereafter, the trial justice refused to grant unconditionally the defendant's motion for a new trial, but did grant such motion unless the plaintiff remitted all of the verdict in excess of $2000.

The plaintiff, pursuant to this ruling, filed such remittitur in the superior court and the case is before us on the defendant's exception to the refusal of the trial justice to grant his motion for a new trial, and on eleven other exceptions to rulings on the introduction or exclusion of evidence during the trial.

The declaration originally contained two counts, the first in trespass for assault and battery and the second in case for alleged alienation by the defendant of the affections of the plaintiff's former wife.   Upon motion of the defendant before trial, the second count was stricken out and the case accordingly was tried solely upon the plaintiff's first count, alleging an assault and battery.   The defendant pleaded the general issue and also filed a special plea in the nature of self-defense.

According to the evidence for the plaintiff, he saw his wife leave his home on July 29, 1933 and he followed her until she went to the defendant's house, which is located a very considerable distance away. Having seen her enter the defendant's house, he started to seek a police officer and while thus engaged he was approached by the defendant on a street corner near the defendant's house.   The defendant asked the plaintiff if he were seeking him (the defendant) and the plaintiff replied that he was not seeking the defendant, but was looking for his wife.   Thereupon and entirely without provocation the defendant struck him with an iron pipe or other instrument over the nose and left eye, knocking the plaintiff to the ground.

The evidence for the plaintiff further shows that he was taken to the hospital in an unconscious condition, was

treated for his injuries and was released a couple of hours later with instructions to return on Sunday, the next day, which he did. On Monday he visited his own family physician, who treated him, and on his advice the plaintiff later reentered the hospital and remained therein from September 20 to October 12, 1933. According to the evidence, his injuries from the blow delivered by the defendant included a comminuted fracture of the bones of his nose and an alleged permanent injury to his left eye and vision; he was unable to perform his usual work for eleven months and was obligated to pay for other medicines and medical expenses, including a future necessary operation on his nose.

According to the evidence for the defendant, on the other hand, the plaintiff's wife did not visit his home at all on that evening. When he (the defendant) was coming home, he was met by the plaintiff on a street corner, where he was insulted and struck in the face by the plaintiff without provocation. He then, in self-defense, punched the plaintiff once in the nose, not with any iron pipe or instrument, but with his bare knuckles. He went away from the scene immediately, leaving the plaintiff on the ground.

There were no eye witnesses to the assault, other than the participants, but each party introduced testimony of other witnesses tending to corroborate certain elements on his side of the case. The plaintiff was thus corroborated by his son and another witness; the defendant was supported by testimony of the plaintiff's former wife, who had obtained a divorce from him and had married the defendant, and also by one of her daughters. The plaintiff's son and another witness gave testimony which tended to establish that the defendant admitted that he was the aggressor, that he had beaten the plaintiff and that he regretted he had not blinded both of plaintiff's eyes. The defendant, however, denied all of this.

The jury who saw and heard the witnesses apparently believed the claim and evidence of the plaintiff and rendered its

verdict in his favor in the sum of $3000. The trial justice, who had the same opportunity as the jury to see and hear the witnesses, has approved that verdict as to liability, but has given us the benefit of his considered opinion that the damages should be reduced to $2000. In his rescript on this point he says: "The Court thinks it quite probable that a portion of the verdict was given because of plaintiff's inability, as he testified, to see clearly through his left eye, but the Court feels that the present condition of the left eye was not shown with sufficient conclusiveness to be due to the assault, since the plaintiff had had trouble with this eye prior to the assault and since Dr. McKenna did not examine this eye for vision."

We have examined the evidence and find it to be wholly conflicting and irreconcilable. As we cannot say that the trial justice was clearly wrong in approving on such conflicting evidence the verdict on the issue of liability, this finding must stand.

The real question, therefore, is whether the verdict as cut down by the remittitur is so excessive as to require a further reduction or the granting of a new trial. It is arguable, we concede, that the verdict upon the record before us in the sum of $2000 may be considered as generous. But the trial justice had instructed the jury that they might, under certain circumstances, depending upon what they found the facts to be, award punitive as well as compensatory damages. Considering the character of the evidence and its careful analysis by the trial justice in his rescript, we are unable to point out in the evidence wherein the verdict as reduced by the remittitur is so excessive as to justify a further reduction or a new trial. The defendant's first exception, therefore, is overruled.

Five of the other eleven exceptions are expressly waived and the remaining six are grouped under two headings. In the first group the answer to the defendant's second exception disposes of the others. We have examined the second

exception and find it to be without merit. In the second group, the defendant contents himself with a general statement of the exceptions substantially as they appear in his bill of exceptions. Accordingly, they may be treated here as not being properly briefed and pressed. They are therefore overruled.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Harlow & Boudreau, John M. Booth,* for plaintiff.

*Frank H. Wildes, Pasquale Romano,* for defendant.